## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AAVN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>WELSPUN GLOBAL<br>BRANDS LIMITED and<br>WELSPUN USA, INC.,<br><br>Defendants. | C.A. No.<br><br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT
### AND DECLARATORY JUDGMENT

1.      Plaintiff AAVN, Inc., ("Plaintiff" or "AAVN"), by and through its undersigned counsel, files this Complaint against Defendants Welspun Global Brands Limited ("Welspun Global") and Welspun USA, Inc., ("Welspun USA") (collectively, "Defendants" or "Welspun"), and alleges as follows:

### NATURE OF THE ACTION

2.      This is an action for patent infringement brought pursuant to the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* Plaintiff seeks relief because Defendants have infringed, and have made clear that they intend to imminently infringe further, Plaintiff's U.S. Patent No. 9,131,790 ("'790 Patent") and U.S. Patent No. 10,808,337 ("'337 Patent") (collectively, "the Asserted Patents").

3.      Plaintiff—and the Asserted Patents—are the brainchild of Mr. Arun Agarwal.  Mr. Agarwal has been recognized as "The King of Home Textiles," and has received numerous awards for his contributions to textile science, business, and the U.S.-India relationship.  Before the

innovations that led to the Asserted Patents, polyester-cotton fabrics could be *either* luxurious *or* durable—but not both.  Through extensive research, Mr. Agarwal found an elusive technique that yields high thread count (*e.g.*, 1,000 TC) Chief Value Cotton (CVC) fabrics that both feel good on human skin and resist degradation during use or cleaning.  This, in part, involved inventing a commercially viable method of making very fine multi-filament polyester yarns that could be cross-weaved with cotton.  Plaintiff's products that utilize Mr. Agarwal's inventions have found remarkable success in the market, fueling AAVN's growth into a successful company.

4.    Defendants are repeat offenders who, as detailed below, have resumed their infringing activities after resolving prior infringement litigation on the '790 Patent.  Upon information and belief, Defendants recently offered for sale and sold to a major U.S. retailer certain 1,000 thread count, Chief Value Cotton bedsheet products (hereafter, "Accused Products") that infringe the Asserted Patents.  The retailer, upon information and belief, intends to resell Defendants' Accused Products to customers on or about Black Friday, *i.e.*, November 24, 2023.  Accordingly, upon information and belief, Defendants will imminently import or have already imported the Accused Products into the United States for delivery to the retailer.  Plaintiff therefore seeks, among other things, damages for Defendants' infringement of the Accused Patents, a declaration that importation or resale of the Accused Products constitutes infringement of the Asserted Patents, and an injunction enjoining Defendants from further infringement.

5.    Plaintiff also seeks enhanced damages on account of Defendants' willful and egregious infringement.  Defendants have long had actual knowledge of AAVN's patents.  Indeed, the parties previously engaged in litigation involving the '790 Patent.  *See generally Woven Textile Fabrics and Products Containing Same*, 337-TA-976 (USITC); *Welspun USA, Inc. et al v. AAVN, Inc.*, 1-15-cv-08138 (SDNY).  The parties resolved these disputes through a Settlement Agreement

dated May 19, 2016 ("Settlement Agreement").  Welspun did not take a license to the Asserted Patents, but rather, committed to ceasing infringement of AAVN's intellectual property. Notwithstanding its commitments, Welspun has now resumed infringing activity.  It has done so despite intimate knowledge of the '790 Patent, knowledge that the '790 Patent has about a dozen patent family members, including the '337 Patent, and acknowledgement that selling the Accused Products would entitle AAVN to enforce the Asserted Patents against Welspun.

## THE PARTIES

6.     Plaintiff is a corporation incorporated and existing under the laws of Texas. Plaintiff has its principal place of business at 123 Oak Lawn Ave, Dallas, Texas 75207.  Plaintiff is in the business of researching and developing woven textile products and licensing its intellectual property.  Plaintiff, along with its wholly owned subsidiary Affiliated Ventures, Inc. , operates textile design studios in Texas, New York, and Arkansas, and makes and sells designer sheets and woven textiles, including under highly regarded brand names like Raymond Waites and Royal Sateen.

7.     Plaintiff is the assignee of all rights, title and interest in each of the Asserted Patents, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Asserted Patents.  Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action.

8.     Defendant Welspun Global is a corporation incorporated in India.  It has a principal place of business at Kamala Mills Compound, Senapati Bapat Marg, Lower Parel, Mumbai 400 013, India.  Welspun Global sells and imports textile fabrics in competition with Plaintiff.

9.     Defendant Welspun USA is incorporated under the laws of Delaware and is a subsidiary of Welspun Global.  Welspun USA, upon information and belief, has a principal place

of business at 295 Fifth Avenue, Suite 1118-1120, New York, New York 11016, and a showroom at 10 West 33rd Street, Suite 1221, New York, New York 10001. Additionally, according to Defendant's website, Welspun USA has also established a distribution network in Grove City, Ohio, and has a registered office located at 3901 Gantz Rd Ste A, Grove City, Ohio 43123.

**JURISDICTION AND VENUE**

10.     This is an action for patent infringement under Title 35 of the United States Code, and for declaratory relief under Title 28 of the United States Code. This Court has subject matter jurisdiction pursuant to at least 28 U.S.C. §§ 1331, 1338, 2201, and 2202, and 35 U.S.C. § 1 *et seq*. This Court further has jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims for declaratory relief as so related to Plaintiff's claims for patent infringement that they form part of the same case and controversy under Article III of the United States Constitution.

11.     This Court has personal jurisdiction over Defendants because they consented to this Court's jurisdiction in the parties' Settlement Agreement. Additionally, the Court has personal jurisdiction over Defendants because they have purposefully availed themselves of this Court's jurisdiction, including through incorporation of Welspun USA in this State, and maintaining sufficient business or contacts within the State of Delaware to justify jurisdiction under the United States Constitution and the Delaware Long Arm Statute.

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 28 U.S.C. § 1400(b). Venue is additionally proper because the parties' Settlement Agreement specifies that any disputes relating to the agreement shall be exclusively resolved by the United States District Court for the District of Delaware.

**BACKGROUND FACTS**

I.     **AAVN is an innovative leader in the textile space.**

13.     AAVN was founded in 2012 by Arun Agarwal.  Over time, AAVN has grown substantially, and is today recognized as one of the largest suppliers of sheets and bedding products in the United States.  AAVN and Affiliated Ventures collaborate with licensees who make and sell bedding products, such as those sold in the United States under the brand name "Alpha Cotton," that benefit from the groundbreaking teachings of these patents.

14.     AAVN and Affiliated Ventures are the creation of the Asserted Patents' inventor, Arun Agarwal.  Mr. Agarwal has been called "The King of Home Textiles," and he has received several honors for his technical and business achievements.  For example, Mr. Agarwal was named 2013 Entrepreneur of the Year by the Greater Dallas Indo-American Chamber of Commerce, and the 2014 Outstanding Entrepreneur by the Indian American Friendship Council.  Mr. Agarwal also received the minority business leader award by the Dallas Business Journal in 2013 and the Times Now/ICICI Bank Non-Resident Indian of the Year Award for his business success in the textile marketplace.  Last year, the Texas Governor named Mr. Agarwal Vice Chairman of the Texas Economic Development Corporation, and in March 2023, the mayor of Dallas nominated Mr. Agarwal to serve as the chair of the Community Bond Task Force group.

15.     The Asserted Patents represent significant breakthroughs in woven textile fabric manufacturing.  In formulating the inventive concept underlying the patents, Mr. Agarwal drew on his childhood memories of polyester being a "rich man's fabric" to develop a process that could create a cotton-polyester fabric that allowed for high thread counts, and therefore, high comfort, without sacrificing structural integrity.  Sheets and bedding products produced according to the Asserted Patents have met considerable and growing commercial success.

## II.    The Asserted Patents cover an important innovation by AAVN in the textile space.

16.    A key factor consumers consider when purchasing textiles designed to contact human skin (*e.g.*, bed sheets or clothing) is comfort.  Durability—*i.e.*, resistance to degradation during use or cleaning—is another key consideration.  However, increased durability often means reduced comfort, and vice versa.  Accordingly, manufacturers of such products must generally strike a balance between comfort and durability, and inventions that allow one to be improved without compromising the other are highly valuable.

17.    Comfort is often increased by using cotton yarns in woven textiles.  Cotton has high absorbency and breathability, and generally feels pleasant on human skin.  However, cotton is not as durable as other fabrics and can degrade readily, particularly when used in an environment with heavy machine laundering, such as in hotels.  Thus, manufacturers of woven textiles can increase comfort by using cotton, but usually must accept that such products will be less durable than other options.

18.    The comfort of a woven textile fabric can be further improved by increasing the fabric's thread count.  The thread count is a measurement of the number of yarns—*i.e.*, individual spun threads—per square inch of fabric.  By using finer yarns, manufacturers of woven textile fabrics can increase the thread count.  A higher thread count is often recognized as an indication of higher quality woven textile fabric, as well as improved tactile sensations (*e.g.*, a luxurious feel) for consumers.

19.    Cotton's durability can be increased by cross weaving it with a more robust fiber. This can be done by weaving cotton in combination with a synthetic fiber such as polyester.  This process increases the woven textile fabric's durability, while maintaining the feel of cotton for the end user.

20.     However, prior to the inventions underlying the Asserted Patents, it was difficult to incorporate synthetic fibers like polyester into a high thread count woven textile fabric. Polyester becomes increasingly brittle when made finer and can break when fed into a loom apparatus for making a high thread count cotton-polyester fabric product. Accordingly, prior to the inventions at issue here, high thread count woven textile fabrics could not take advantage of the durability benefits of a cotton-polyester hybrid weave.

21.     The Asserted Patents overcome the problem of having to choose between comfort and durability when weaving high thread count cotton-synthetic fabrics. The Asserted Patents allow for the manufacturing of woven textile fabrics with high thread counts (*e.g.*, 1,000 TC), while maintaining appreciable minimum tensile strength throughout the end product. The resulting fabric is of exceptionally high quality compared to prior cotton-synthetic weaves. Products that embody the Asserted Patents not only feel luxurious, but can also withstand rigorous use and cleaning. Furthermore, the patents can substantially lower a manufacturer's costs by decreasing the amount of expensive cotton needed to manufacture desirable fabric.

**III.    Welspun was previously infringing the Asserted Patents.**

22.     At least as of 2015, Welspun has been in the business of developing and selling woven textile fabrics and products, which are predominately manufactured in India. This included "Sedona" branded 700 thread count sheets, which were sold by Welspun for importation into the United States market. Welspun USA would then import, sell, sell for importation, and/or sell after importation 700 thread count sheet sets in/into the United States market. In the United States, the Sedona 700 thread count sheet set was offered for sale through retail department stores.

23.     The importation, sale, and offer for sale of Sedona 700 thread count sheets and other woven textile fabrics and products by Defendants infringed at least the '790 Patent.

Accordingly, on September 15, 2015, Plaintiff sent a demand letter to Welspun notifying them of the '790 Patent.  In response, on October 15, 2015, Welspun filed a civil action against AAVN in the United States District Court for the Southern District of New York, styled as *Welspun Global Brands Ltd., and Welspun USA Inc. v. AAVN, Inc.*, Case No. 1:15-cv-08138-DLC, seeking a declaratory judgment of non-infringement of the '790 Patent ("District Court Action").

24.     On November 12, 2015, AAVN filed a complaint against Welspun before the United States International Trade Commission, alleging infringement of the '790 Patent in *Certain Woven Textile Fabrics and Products Containing Same*, Inv. No. 337-TA-976 ("ITC Investigation").  In its ITC Complaint, AAVN sought "a permanent general exclusion order directed to excluding from entry into the United States certain woven textile fabrics and products containing same that infringe one or more asserted claims" of the '790 Patent.  AAVN also filed a counterclaim for patent infringement in the District Court Action.

## IV.     The Parties resolved their disputes in 2016.

25.     Given a mutual desire to settle and compromise the disputes between them related to the ITC Investigation and the District Court Action, Defendants and AAVN entered into a Settlement Agreement on May 19, 2016.

26.     The Settlement Agreement stipulated that Plaintiff would provide a certain number of days' notice to Welspun before suing for patent infringement in the future.  During this notice period, the parties would meet and confer, and in good faith attempt to resolve such a dispute.

27.     The Parties further agreed that the laws of Delaware would govern the Settlement Agreement, and stipulated that any disputes would be resolved by this Court.

28.     The present complaint relates to Defendants' products and conduct that were not authorized under the Settlement Agreement.

**V.      AAVN recently discovered that Welspun is again infringing the Asserted Patents.**

29.      AAVN was recently informed by a major U.S. retailer that the retailer did not need any supply from AAVN of 1,000 thread count polyester-cotton sheets for the retailer's popular 2023 Black Friday sale.  AAVN had hoped and expected to fulfill this sizeable order.

30.      Upon making inquiries, AAVN learned that it lost out on this significant opportunity because of Welspun.  Specifically, AAVN learned that Welspun had offered to sell—and, upon information and belief, has sold—infringing Accused Products to the retailer.

31.      Welspun's manufacturing facilities are in India.  Upon information and belief, pursuant to the above-mentioned sale, Welspun is currently manufacturing in India the Accused Products purchased by the retailer and thus will imminently be importing into the United States its Accused Products for delivery to the retailer.  Upon information and belief, Defendants' importation into the United States and delivery of the Accused Products to the retailer will need to be completed well in advance of the retailer's November 2023 Black Friday sale.

32.      As detailed further below, the Accused Products are a high thread count cotton-polyester fabric that Welspun could not have achieved absent infringement of the Asserted Patents.

33.      Welspun does not have a license or other authorization from AAVN to make, use, sell, offer to sell, or import into the U.S. any product, including the Accused Products, that is covered by, or made by a process that is covered by, one or more claims of the Asserted Patents.

**VI.     Despite its promises, Welspun failed to engage with AAVN in good faith.**

34.      On June 22, 2023, promptly upon learning of Welspun's ongoing and threatened infringement of the Asserted Patents, AAVN sent a notice and demand letter, through its counsel, to Welspun.  This letter initiated a mandatory pre-suit meet-and-confer period contemplated in the parties' Settlement Agreement.

35.     In its letter, AAVN asked Welspun to propose dates for the meet-and-confer. AAVN additionally asked Welspun to provide, three business days prior to the meeting, a copy of relevant purchase orders between US retailers and Welspun, the location where the Accused Products are being manufactured, a description of the equipment being used to manufacture the products, and samples of the products for testing along any the intended product packaging. AAVN specifically requested that, in light of the short notice period, Welspun provide a prompt response.

36.     Welspun, unfortunately, did not abide by its obligations.  Welspun was deliberately slow to respond to Plaintiff's notice, and indeed, responded "substantively" to the notice only on July 7, 2023, *i.e.*, just four business days prior to the conclusion of the meet-and-confer period. This meant that instead of having a full opportunity to try and avoid this litigation, the parties only had a fraction of the time they originally contemplated.

37.     Moreover, Welspun's response was evasive.  Welspun proposed no dates for the mandatory meet-and-confer.  Nor did Welspun furnish the basic evidence relevant to this case that AAVN had reasonably requested (*e.g.*, purchase orders and a sample).  Instead, Welspun asserted vaguely that its products did not infringe "for multiple reasons," without actually articulating—let alone substantiating—even one of those purported reasons.  Welspun additionally demanded that the parties sign a non-disclosure agreement whereby AAVN's in-house technical experts would be excluded from assessing Welspun's yet-to-be-disclosed technical arguments regarding non-infringement.

38.     Notably, this "substantive" response followed a June 28, 2023, email wherein Welspun promised to reply to the substance of AAVN's letter in due course and consistent with the timing in the parties' Settlement Agreement, while levying a spurious allegation against

AAVN's counsel.  Objecting that AAVN's counsel should not be allowed to represent AAVN in this matter, Welspun demanded a prompt explanation regarding counsel's (and AAVN's law firm's) continued participation on this matter.  AAVN quickly defused Welspun's spurious objection by citing to a prior commitment by Welspun in which it had explicitly waived this very objection.

39.     AAVN responded to Welspun's July 7, 2023, letter just two business days later, on July 11, 2023.  AAVN noted its disappointment with Welspun's conduct, but provided Welspun yet another opportunity to disclose information about its products.  Per Welspun's request, AAVN provided a Protected Communications Agreement, agreeing that AAVN's employees would not have access to Welspun's allegedly confidential information.  AAVN noted that it would stand by to execute the confidentiality agreement promptly, and would then expect Welspun to immediately disclose the details of Welspun's CVC product and manufacturing process.  AAVN expressly reserved its rights, stating that AAVN's proposed confidentiality agreement should not be understood as condoning Welspun's dilatory tactics, absolving Welspun of its failure to engage productively with AAVN, or acquiescing to any extension to the pre-suit meet-and-confer period.

40.     Welspun responded the following day, stated that the earliest it would be able to provide Welspun's comments on the confidentiality agreement would be July 13, 2023— effectively conceding that Welspun had run out the clock.  Again, Welspun proposed no dates for a meet-and-confer.

41.     In sum, Welspun sidestepped the pre-suit meet-and-confer period, exhibiting no genuine initiative to furnish evidence of non-infringement, and thereby leaving no doubt that Welspun was indeed exploiting Plaintiff's patented technologies.

42.     Therefore, and in view of Welspun's immediate or imminent importation of the Accused Products, AAVN finalized arrangements to file this lawsuit.  At approximately 9:00 pm on July 13, 2013, long after business hours, Welspun responded providing no proposed dates for a meet-and-confer, nor any evidence of non-infringement, but instead with mark-ups to the confidentiality agreement that included onerous and unnecessary requirements.  The mandatory pre-suit period having expired, AAVN had no obligation to further delay seeking relief from this Court.

43.     Welspun's infringement of the Asserted Patents irreparably harms Plaintiff.  Indeed, upon information and belief, AAVN has already lost opportunities in the competitive market for woven textile fabrics as a result of Welspun's infringement.  Welspun's infringement is egregious as it was done with full knowledge of the Asserted Patents and of the fact that distributing the Accused Products in the United States would be subject to patent enforcement by AAVN.  Welspun's willful disregard for AAVN's intellectual property rights is evidence that remedies available at law are insufficient, and that Plaintiff is entitled to an injunction requiring Welspun to stop its infringing activities.

**COUNT 1:  WILLFUL INFRINGEMENT OF THE '790 PATENT**

44.     Plaintiff incorporates by reference and re-alleges paragraphs 1–44 herein.

45.     Welspun is directly and literally infringing at least Claims 1–3 of the '790 Patent.

46.     For example, the Accused Products contain between 90 and 235 ends per inch warp yarns and between 100 and 765 picks per inch multi-filament polyester weft yarns.  Upon information and belief, the Accused Products are a 1,000 thread count polyester-cotton (CVC) product with approximately 200–235 ends per inch of the cotton warp yarn and approximately 680–750 picks per inch of the multi-filament polyester weft yarns.  Additionally, upon information

and belief, the Accused Products use 100% cotton as the warp yarn and 100% multi-filament polyester weft yarn.  Furthermore, during the parties' contractually mandated meet-and-confer-period, Plaintiff invited Welspun to show that its product did not meet the foregoing claim requirement, but Welspun failed to do so.  Alternatively, if the number of ends per inch warp yarns or picks per inch multi-filament polyester weft yarns in the Accused Products are slightly outside the claimed range, the Accused Products still infringe under the doctrine of equivalents.

47.     During manufacture of the Accused Products, picks are woven into the textile fabric in groups of at least two multi-filament polyester weft yarns running parallel to each other.  Upon information and belief, this type of parallel pick insertion would be necessary to produce a 1,000 thread count bedsheet set of a cotton/polyester fabric.  Furthermore, during the parties' contractually mandated meet-and-confer-period, Plaintiff invited Welspun to show that its product did not meet the foregoing claim requirement, but Welspun failed to do so.

48.     During manufacture of the Accused Products, multi-filament polyester weft yarns are wound substantially parallel to one another and substantially adjacent to one another on a multi-pick yarn package to enable simultaneous insertion of multi-filament polyester weft yarns during a single pick insertion event of a loom apparatus's pick-insertion apparatus.  Upon information and belief, absent simultaneous insertion of polyester wefts in a single pick insertion event as claimed, a 1,000 thread count CVC fabric cannot be achieved.  Upon information and belief, the Accused Products are made with 100% multi-filament polyester weft yarn inserted during weaving using air jet pick insertion apparatus.  Furthermore, during the parties' contractually mandated meet-and-confer-period, Plaintiff invited Welspun to show that its product did not meet the foregoing claim requirement, but Welspun failed to do so.

49.     During manufacture of the Accused Products, the number of the multi-filament polyester weft yarns wound substantially parallel to one another and substantially adjacent to one another on the weft yarn package is two.  Upon information and belief, absent the claimed parallel and adjacent winding of the polyester weft yarns in the yarn package, weaving a 1,000 thread count CVC fabric is not commercially viable.  Additionally, upon information and belief, utilizing more than two weft yarn packages would lead to manufacturing challenges (*e.g.*, tangling and/or breaking) that could render the process infeasible and also compromise the quality of the end product.  Furthermore, during the parties' contractually mandated meet-and-confer-period, Plaintiff invited Welspun to show that its product did not meet the foregoing claim requirement, but Welspun failed to do so.

50.     During manufacture of the Accused Products, the number of the multi-filament polyester weft yarns conveyed by the pick insertion apparatus across a warp shed of a loom apparatus and through a set of warp yarns in the single pick insertion event is between two and eight.  Upon information and belief, a different parallel pick insertion configuration would produce a product that fails to meet the standards demanded by the abovementioned retailer for its Black Friday sale.  The fact that Welspun won that business, upon information and belief, shows that the number of multi-filament polyester weft yarns conveyed by the pick insertion apparatus to make the Accused Products is between two and eight.  Furthermore, during the parties' contractually mandated meet-and-confer-period, Plaintiff invited Welspun to show that its product did not meet the foregoing claim requirement, but Welspun failed to do so.

51.     During manufacture of the Accused Products, the pick insertion apparatus of the loom apparatus is an air jet pick insertion apparatus.  Air jet looms are the industry standard today, particularly for high thread count CVC products.  It would be unusual, inefficient, and unfeasible

for Welspun to be utilizing a different loom to make the Accused Products.  For example, use of power or semi-automatic looms would severely limit daily fabric yield, while also risking widespread defects in the fabric.  Furthermore, during the parties' contractually mandated meet-and-confer-period, Plaintiff invited Welspun to show that its product did not meet the foregoing claim requirement, but Welspun failed to do so.

52.     During manufacture of the Accused Products, the multi-filament polyester weft yarns are wound on the multi-pick yarn package at an angle of between 15 and 20 degrees to enable the simultaneous inserting of the multi-filament polyester weft yarns during the single pick insertion event.  Upon information and belief, a wider or narrower angle would not work and would result in frequent yarn breakages.  Furthermore, during the parties' contractually mandated meet-and-confer-period, Plaintiff invited Welspun to show that its product did not meet the foregoing claim requirement, but Welspun failed to do so.  Alternatively, if the Accused Products are made using multi-pick yarn packages with winding angles that are slightly outside the claimed range, the Accused Products still infringe under the doctrine of equivalents.

53.     During manufacture of the Accused Products, the multi-filament polyester weft yarns are wound on the multi-pick yarn package at a Type A shore hardness of between 65 to 70 to enable the simultaneous inserting of the multi-filament polyester weft yarns during the single pick insertion event.  Upon information and belief, a different shore hardness would not work and would result in frequent yarn breakages.  Furthermore, during the parties' contractually mandated meet-and-confer-period, Plaintiff invited Welspun to show that its product did not meet the foregoing claim requirement, but Welspun failed to do so.  Alternatively, if the Accused Products are made using multi-pick yarn packages with shore hardness that is slightly outside the claimed range, the Accused Products still infringe under the doctrine of equivalents.

54.     Moreover, in the Accused Products, the warp yarns are made of a cotton material. As noted above, the Accused Products are a polyester-cotton CVC product that are made using polyester weft yarns.  Accordingly, the warp yarns in the Accused Products comprise of cotton. Furthermore, during the parties' contractually mandated meet-and-confer-period, Plaintiff invited Welspun to show that its product did not meet the foregoing claim requirement, but Welspun failed to do so.

55.     Finally, in the Accused Products, the total thread count is from 300 to 1,000.  As noted above, upon information and belief, the Accused Products are a 1,000 thread count CVC product.    Furthermore, during the parties' contractually mandated meet-and-confer-period, Plaintiff invited Welspun to show that its product did not meet the foregoing claim requirement, but Welspun failed to do so.  Alternatively, if the Accused Products have a thread count that is slightly outside the claimed range, the Accused Products still infringe under the doctrine of equivalents.

56.     Welspun is thus liable for infringement of the '790 Patent, pursuant to 35 U.S.C. § 271.

57.     To the extent Welspun utilizes a different process than that outlined above to make the Accused Products, the differences are insubstantial.  Assuming the Accused Products do not literally infringe the '790 Patent, at a minimum, they infringe under the doctrine of equivalents.

58.     Furthermore, Welspun is liable for indirect infringement because of its inducement of others to resell the Accused Products.  For example, Welspun is enabling a large U.S. retailer to resell the Accused Products during its Black Friday 2023 sale, and thereby commit direct infringement.  Indeed, upon information and belief, Welspun is providing information to the retailer to allow the retailer to advertise the characteristics of the Accused Products and promote

their sales within the U.S.  Welspun is enabling this direct infringement by the reseller with full knowledge that the '790 Patent exists, that the Accused Products infringe that patent, and that third party handling of the Accused Products (*e.g.*, sales by retailers, use by consumers, etc.) will constitute further infringement.  Welspun therefore has specific intent for third parties to directly infringe at least Claims 1–3 of the '790 Patent, and is indirectly infringing the patent under 35 U.S.C. § 271(b).

59.     As a direct and proximate result of Welspun's infringement of the '790 Patent, AAVN has suffered monetary damages and is entitled to a money judgment in an amount adequate to compensate for Welspun's infringement, including compensating for AAVN's lost profits, but in no event less than a reasonable royalty for the use made of the invention by Welspun, together with interest and costs as fixed by the court.  AAVN will continue to suffer damages in the future unless Welspun's infringing activities are enjoined by this Court.

60.     Unless a permanent injunction is issued enjoining Welspun and its agents, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '790 Patent, Plaintiff will be greatly and irreparably harmed.

61.     Welspun does not have a license or other authorization from Plaintiff to make, use, sell, offer to sell, or import into the U.S. any product, including the Accused Products, that is covered by, or made by a process that is covered by, one or more claims of the '790 Patent.

62.     Welspun's infringement of the '790 Patent is willful, intentional, and culpable. Welspun has been aware of the '790 Patent since at least 2016, when Plaintiff sued Welspun for infringing the patent, leading to the Settlement Agreement.  Upon information and belief, Welspun has engaged, and is continuing to engage, in infringing activity despite an objectively high

likelihood that its actions constitute infringement of a valid patent.  Plaintiff is therefore entitled to enhanced damages for Welspun's infringement of the '790 Patent.

63.     Welspun's infringing conduct is exceptional, which entitles Plaintiff to recover its attorneys' fees in this action pursuant to 35 U.S.C. § 285.

## COUNT 2:  DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '790 PATENT

64.     Plaintiff incorporates by reference and re-alleges paragraphs 1–63 herein.

65.     As alleged above, the Accused Products infringe at least Claims 1–3 of the '790 Patent, literally and/or under the doctrine of equivalents.

66.     Plaintiff is entitled to relief not only for Welspun's past infringement, but also Welspun's imminently threatened infringement.  Specifically, besides infringing the '790 Patent through offering for sale and/or selling its Accused Products, upon information and belief, Welspun will imminently infringe the '790 Patent directly through importation of the Accused Products into the United States from India.  Welspun's infringing importation is imminent because, upon information and belief, Welspun has undertaken contractual obligations to complete delivery of the Accused Products well in advance of Black Friday (*i.e.*, November 24, 2023).  Welspun's infringing importation is not speculative because, upon information and belief, Welspun has undertaken contractual obligations to deliver the Accused Products in the United States for the U.S. retailer to resell to domestic consumers.

67.     Welspun has taken concrete steps toward infringing the '790 Patent through importation of the Accused Products into the United States.  For example, Welspun has negotiated and, upon information and belief, agreed upon a contract with a U.S. retailer that requires such importation.  Furthermore, upon information and belief, Welspun is already making (or will soon start making) the Accused Products in India pursuant to its agreement with the retailer.

Additionally, Welspun has retained agents, who, upon information and belief, will import into the United States the Accused Products on Welspun's behalf, once those products are ready for shipment. Indeed, upon information and belief, Welspun is taking all steps necessary to ensure that it can fulfill the contract and timely deliver the Accused Products to the purchaser in the United States.

68. Welspun will also imminently infringe the '790 Patent indirectly because of its inducement of others to resell the Accused Products. For example, Welspun is enabling a large U.S. retailer to resell the Accused Products during its Black Friday 2023 sale, and thereby commit direct infringement. Indeed, upon information and belief, Welspun is providing information to the retailer to allow the retailer to advertise the characteristics of the Accused Products and promote their sales within the U.S. Welspun is doing so with full knowledge that the '790 Patent exists, that the Accused Products infringe that patent, and that third party handling of the Accused Products (*e.g.*, sales by retailers, use by consumers, etc.) will constitute further infringement. Welspun therefore has specific intent for third parties to directly infringe at least Claims 1–3 of the '790 Patent, and will indirectly infringe the patent under 35 U.S.C. § 271(b).

69. AAVN is therefore entitled to a declaratory judgment that Welspun's importation into the United States of the Accused Products will infringe at least one valid claim of the '790 Patent. Plaintiff is additionally entitled to a declaration that sale or use of the Accused Products within the United States will infringe at least one valid claim of the '790 Patent. Plaintiff is further entitled to declarations that Welspun's anticipated direct and indirect infringement will be willful, that this is an exceptional case, and that Plaintiff will be entitled to enhanced damages and attorneys' fees pursuant to 35 U.S.C. § 285.

70.     Plaintiff has no adequate remedy at law.   Plaintiff will be substantially and irreparably harmed if Defendants are not enjoined from infringing the '790 Patent.

### COUNT 3:  WILLFUL INFRINGEMENT OF THE '337 PATENT

71.     Plaintiff incorporates by reference and re-alleges paragraphs 1–70 herein.

72.     Welspun is directly and literally infringing at least Claims 1, 4, and 9 of the '337 Patent.  For example, the Accused Products are made by a process that comprises drawing each of multiple partially oriented yarns from a corresponding supply package to form an oriented yarn, the each of the multiple partially oriented yarns being of one of: a polyester filament fiber material and a synthetic filament fiber material.  For example, upon information and belief, the Accused Products are a 1,000 thread count polyester-cotton (CVC) product that are made using two multi-filament polyester weft yarns.  Upon information and belief, such multi-filament polyester yarn packages cannot be made without first drawing multiple partially oriented yarns from a supply package and forming an oriented yarn.

73.     The Accused Products are made by a process that comprises twisting and detwisting filaments within the formed oriented yarn to provide texture thereto, to provide a low stability interlacing during weaving, and to intermingle the filaments comprising the formed oriented yarn.  For example, upon information and belief, the Accused Products utilize multi-filament polyester weft yarns that are made by twisting and detwisting 100% polyester filaments.  Upon information and belief, absent this step, it is not commercially or technically feasible to develop polyester yarns of sufficient fineness for making high thread count CVC products.

74.     The Accused Products are made by a process that comprises applying a uniform air pressure to the formed oriented yarn to provide a counter-twist following the twisting and the detwisting of the filaments.  For example, upon information and belief, the Accused Products are

made using multi-filament polyester weft yarns that are made by twisting and detwisting filaments and then applying uniform air pressure.  Upon information and belief, failure to perform this step would lead to inconsistencies in the polyester yarns, causing problems during manufacture and defects in the final product.

75.     The Accused Products are made by a process that comprises forming a multi-pick yarn package based on winding all formed oriented yarns analogous to and including the formed oriented yarn onto a spool following the application of the uniform air pressure, the all formed oriented yarns serving as weft yarns forming adjacent substantially parallel yarns wound together. For example, upon information and belief, the Accused Products are made using a multi-pick filament yarn package that serves as the weft yarns.  Upon information and belief, absent this step, it is not commercially or technically feasible to develop high (*e.g.*, 1,000) thread count CVC products.

76.     The Accused Products are made by a process that comprises simultaneously inserting the weft yarns in a single pick insertion event of a pick insertion apparatus of a loom apparatus and conveying, through the pick insertion apparatus, the simultaneously inserted weft yarns across a warp shed of the loom apparatus through a set of warp yarns.  For example, upon information and belief, the Accused Products are made using multi-pick filament polyester yarn packages, wherein 100% multi-filament polyester weft yarn is inserted during weaving using air jet pick insertion apparatus.  Upon information and belief, absent simultaneous insertion of polyester wefts in a single pick insertion event as claimed, a 1,000 thread count CVC fabric cannot be achieved.  Upon information and belief, the simultaneously inserted weft yarns are conveyed across a warp shed of Welspun's loom apparatus through a set of warp yarns.

77.     The Accused Products are made by a process that comprises interlacing, through a beat up motion of a reed apparatus of the loom apparatus, the set of warp yarns and the conveyed weft yarns to produce an incremental length of a woven textile fabric.  For example, upon information and belief, Welspun interlaces the warp yarns and conveyed weft yarns through a reed beat up motion of its loom apparatus.  This step, upon information and belief, yields an incremental length of a woven textile fabric, *i.e.*, the Accused Products.

78.     Additionally, the Accused Products have at least one of: a total thread count from 190 to 1,500; a minimum tensile strength in a warp direction between 17 to 65 kilograms; a minimum tensile strength in a weft direction between 11.5 to 100 kilograms, and a warp-to-fill ratio between 1:2 to 1:4.  For example, upon information and belief, the Accused Products have a thread count of 1,000.  Further, upon information and belief, the Accused Products also have the specified warp and weft tensile strength ranges, as well as the specified warp-to-fill ratio, because different specifications would fail to meet the standards demanded by the abovementioned retailer for its Black Friday sale.  Furthermore, the Accused Products have 90 to 235 ends per inch of the warp yarns and 100 to 1410 picks per inch of the weft yarns.  For example, the Accused Products are a 1,000 thread count polyester-cotton (CVC) product, and such a product would not be technically or commercially feasible without having between 90 and 235 ends per inch warp yarns and between 100 to 765 picks per inch multi-filament polyester weft yarns.  Specifically, upon information and belief, the Accused Products have approximately 200 to 235 ends per inch of the cotton yarn and approximately 680 to 750 picks per inch of the polyester yarns.

79.     Welspun is thus liable for infringement of the '337 Patent, pursuant to 35 U.S.C. § 271(g).

80.     To the extent Welspun utilizes a different process than that outlined above to make the Accused Products, the differences are insubstantial.  Assuming the Accused Products do not literally infringe the '337 Patent, at a minimum, they infringe under the doctrine of equivalents.

81.     Furthermore, Welspun is liable for indirect infringement because of its inducement of others to resell the Accused Products.  For example, Welspun is enabling a large U.S. retailer to resell the Accused Products during its Black Friday 2023 sale, and thereby commit direct infringement.  Indeed, upon information and belief, Welspun is providing information to the retailer to allow the retailer to advertise the characteristics of the Accused Products and promote their sales within the U.S.  Welspun is enabling this direct infringement by the reseller with knowledge that the '337 Patent exists, that the Accused Products infringe that patent, and that third party handling of the Accused Products (*e.g.*, sales by retailers, use by consumers, etc.) will constitute further infringement.  Welspun therefore has specific intent for third parties to directly infringe at least Claims 1, 4 and 9 of the '337 Patent, and is indirectly infringing the patent under 35 U.S.C. § 271(b).

82.     As a direct and proximate result of Welspun's infringement of the '337 Patent, AAVN has suffered monetary damages and is entitled to a money judgment in an amount adequate to compensate for Welspun's infringement, including compensating for AAVN's lost profits, but in no event less than a reasonable royalty for the use made of the invention by Welspun, together with interest and costs as fixed by the court.  AAVN will continue to suffer damages in the future unless Welspun's infringing activities are enjoined by this Court.

83.     Unless a permanent injunction is issued enjoining Welspun and its agents, servants, employees, representatives, affiliates, and all others acting in active concert therewith from infringing the '337 Patent, Plaintiff will be greatly and irreparably harmed.

84.     Welspun does not have a license or other authorization from Plaintiff to make, use, sell, offer to sell, or import into the U.S. any product, including the Accused Products, or any product made by a process, that is covered by one or more claims of the '337 Patent.

85.     Welspun's infringement of the '337 Patent is willful, intentional, and culpable. Welspun has been aware of the '337 Patent—or willfully blind to its existence—at least since the patent issued in 2020.  The parties' Settlement Agreement did not solely concern the '790 Patent, but also its dozen or so family members, including the '337 Patent.  Upon information and belief, in light of the parties' prior litigation and their status as competitors in the same relatively small field, Welspun monitored AAVN's patent filings, particularly AAVN's patent applications relating to the '790 Patent.  Thus, upon information and belief, Welspun acquired actual knowledge of the '337 Patent through its patent monitoring activities.

86.     Alternatively, Welspun had actual knowledge of the teachings of the '790 Patent, and despite recognizing the high likelihood of related patents (like the '337 Patent) claiming varying aspects of those teachings, recklessly chose to stay willfully blind to the existence of the '337 Patent.  At a minimum, Welspun has actual knowledge of the '337 Patent as of the filing of this complaint.  Upon information and belief, Welspun has engaged, and is continuing to engage, in infringing activity despite an objectively high likelihood that its actions constitute infringement of a valid patent.  Plaintiff is therefore entitled to enhanced damages for Welspun's infringement of the '337 Patent.

87.     Welspun's infringing conduct is exceptional, which entitles Plaintiff to recover its attorneys' fees in this action pursuant to 35 U.S.C. § 285.

### COUNT 4:  DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '337 PATENT

88.     Plaintiff incorporates by reference and re-alleges paragraphs 1–87 herein.

89.     As alleged above, the Accused Product infringes at least Claims 1, 4, and 9 of the '337 Patent, literally and/or under the doctrine of equivalents.

90.     Plaintiff is entitled to relief not only for Welspun's past infringement, but also Welspun's imminently threatened infringement.  Specifically, besides infringing the '337 Patent through offering for sale and/or selling its Accused Products, upon information and belief, Welspun will imminently infringe the '337 Patent directly through importation of the Accused Products into the United States from India.  Welspun's infringing importation is imminent because, upon information and belief, Welspun has undertaken contractual obligations to complete delivery of the Accused Products well in advance of Black Friday (*i.e.*, November 24, 2023).  Welspun's infringing importation is not speculative because, upon information and belief, Welspun has undertaken contractual obligations to deliver the Accused Products in the United States for the U.S. retailer to resell to domestic consumers..

91.     Welspun has taken concrete steps toward infringing the '337 Patent through importation of the Accused Products into the United States.  For example, Welspun has negotiated and, upon information and belief, agreed upon a contract with a U.S. retailer that requires such importation.  Furthermore, upon information and belief, Welspun is already making (or will soon start making) the Accused Products in India pursuant to its agreement with the retailer. Additionally, Welspun has retained agents, who, upon information and belief, will import into the United States the Accused Products on Welspun's behalf, once those products are ready for shipment.  Indeed, upon information and belief, Welspun is taking all steps necessary to ensure that it can fulfill the contract and timely deliver the Accused Products to the purchaser in the United States.

92.     Welspun will also imminently infringe the '337 Patent indirectly because of its inducement of others to resell the Accused Products.  For example, Welspun is enabling a large U.S. retailer to resell the Accused Products during its Black Friday 2023 sale, and thereby commit direct infringement.  Indeed, upon information and belief, Welspun is providing information to the retailer to allow the retailer to advertise the characteristics of the Accused Products and promote their sales within the U.S.  Welspun is doing so with knowledge that the '337 Patent exists, that the Accused Products infringe that patent, and that third party handling of the Accused Products (*e.g.*, sales by retailers, use by consumers, etc.) will constitute further infringement.  Welspun therefore has specific intent for third parties to directly infringe at least Claims 1, 4 and 9 of the '337 Patent, and will indirectly infringe the patent under 35 U.S.C. § 271(b).

93.     AAVN is therefore entitled to a declaratory judgment that Welspun's importation into the United States of the Accused Products will infringe at least one valid claim of the '337 Patent.  Plaintiff is additionally entitled to a declaration that sale or use of the Accused Products within the United States will infringe at least one valid claim of the '337 Patent.  Plaintiff is further entitled to declarations that Welspun's anticipated direct and indirect infringement will be willful, that this is an exceptional case, and that Plaintiff will be entitled to enhanced damages and attorneys' fees pursuant to 35 U.S.C. § 285.

94.     Plaintiff has no adequate remedy at law.  Plaintiff will be substantially and irreparably harmed if Defendants are not enjoined from infringing the '337 Patent.

**JURY DEMAND**

95.     Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.   A declaration that the Asserted Patents are valid and enforceable;

B.   A judgment that Welspun has infringed directly and indirectly one or more claims of each of the Asserted Patents;

C.   A declaration that Welspun's importation of the Accused Products into the United States will directly infringe one or more claims of each of the Asserted Patents;

D.   An award of damages pursuant to 35 U.S.C. § 284 for Welspun's past and continuing or future infringement, up until the date such judgment is entered with respect to each of the Asserted Patents, including pre- or post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

E.   A finding that Welspun's infringement of each of the Asserted Patents has been willful, and enhancement by three times of the damages determined by the jury or assessed by the Court;

F.   A permanent injunction enjoining Welspun from further infringement of each of the Asserted Patents;

G.   A finding that this is an exceptional case entitling Plaintiff to its reasonable attorneys' fees under 35 U.S.C. § 285;

H.   An order for accounting of damages for Welspun's acts of infringement;

I.   An award of costs, expert witness fees, and reasonable attorneys' fees;

J.   Any further relief at law or in equity as the Court deems just and proper.

Dated: July 14, 2023                  Respectfully submitted,


                                      YOUNG CONAWAY STARGATT & TAYLOR,
                                      LLP

                                      /s/ *Adam W. Poff*
                                      Adam W. Poff (#3990)
                                      Robert M. Vrana (#5666)
                                      Rodney Square
                                      1000 North King Street
                                      Wilmington, DE 19801
                                      (302) 571-6600
                                      apoff@ycst.com
                                      rvrana@ycst.com

                                      Ranganath Sudarshan
                                      David A. Garr
                                      COVINGTON & BURLING LLP
                                      One CityCenter
                                      850 Tenth Street, NW
                                      Washington, DC 20001
                                      Tel: (202) 662 6000
                                      Email: dgarr@cov.com
                                      rsudarshan@cov.com

                                      Udit Sood
                                      COVINGTON & BURLING LLP
                                      Salesforce Tower
                                      415 Mission Street, Ste 5400
                                      San Francisco, CA 94111
                                      Tel: (415) 591 6000
                                      Email: usood@cov.com

                                      Attorneys for Plaintiff AAVN, Inc.